WESTMORELAND COUNTY.

NOVEMBER TERM, 1882, No. 33.                    OCTOBER 2, 1882.

## The Baltimore and Ohio R. R. Co. *v.* The Sulphur Spring Independent School District of Sewickley Township.

1. In an action against a railroad company for injuries to a building by a flood, which injuries were alleged to have been caused by the failure of the defendant to keep its culvert in proper condition, there was evidence that two of the three barrels of the culvert were nearly closed up. The Court charged the jury that if the company constructed the culvert in a reasonably skillful manner, and in such a way as to vent the water in cases of ordinary freshets, and kept the same in proper repair, they had done all that could be asked of them. Subject to this charge the Court affirmed plaintiff's point that if the jury believed from all the evidence in the case that the three barrels of the defendant's culvert, if open and free from obstructions, would have

[Balt. & Ohio R. R. Co. v. Sulphur Sp'g Ind. Sch. Dist. Sewickley tp.]

been sufficient under the circumstances to have vented and discharged such a quantity of water as would have prevented the damage, the plaintiff was entitled to recover. *Held*, not to be error.

2. The Court further charged that "if the ordinary state of repairs in which the culvert was kept was not good, long time would not be an excuse; but if the culvert had been kept in an ordinarily good state of repairs before and up to the time of the flood, and you believe this was an extraordinary flood, the defendant would be relieved from responsibility, any want of proper repairs of the culvert not being the proximate or producing cause of the damage." *Held*, not to be error.

3. A court would in no case be justified in directing a jury to find a special verdict.

4. A court may, in their discretion, recommend a special verdict, but it is a discretion this Court will not review and reverse for their refusing to exercise it.

Before SHARSWOOD, C. J. ; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Westmoreland County*.

Case by the Sulphur Spring Independent School-District of Sewickly township, Westmoreland county, against the Baltimore & Ohio Railroad Company, lessee of the Pittsburgh & Connellsville Railroad Company, to recover damages for the loss of a school-house, through the alleged negligence of the defendant.

Upon the trial in the court below, before HUNTER, P. J., the following facts appeared:

Shaner's Run passes under the railroad of the defendant and empties into the Youghiogheny river. Where the road crosses the run was a culvert with three openings called "barrels," with divisions between them built of stone. One of these barrels was twenty-eight and three fourth inches wide and four feet seven inches high ; the second was twenty-six inches wide and four feet four inches high ; and the third was thirty-one and one half inches wide and four feet six inches high. The school-house stood in the hollow above the crossing. The railroad was nine and one half inches lower than the top of the foundation of the school-house. Previous to July 26, 1879, the culvert had been sufficient to vent the water there. On that day there was a very heavy rain. The flood raised up in the hollow, overflowed the railroad and carried away the tracks and ballast. The water was two and one half feet above the rail and about three hundred feet wide. The school-house was floated off of its foundations, carried across the railroad into the river, and broken to pieces.

*John Hamilton*, for the plaintiff, testified :

"Prior to July 26, two of these barrels were nearly closed up. The one next McGughen's lot was entirely closed, and another one was nearly closed, that is, the middle one. . . . . . They were in that condition four or five years." This testimony was confirmed by other witnesses for the plaintiff.

A number of witnesses for the plaintiff testified that in their opinion, if the barrels had been in good condition, the school-house would not have been carried away.

*J. T. Struble,* for the defense, testified, *inter alia:*

"In the morning of the 26th of July, 1879, I was cleaning out the culvert at Shaner station. It was my business to clean out the culverts. We had one barrel cleaned out altogether, and the second one partly cleaned. It would have taken a short time to finish it. The third one we hadn't touched at all. I suppose it might have taken us half an hour or an hour to finish the second one. I could see through it. There was only rubbish at the mouth of it."

*Sigismund Lowe,* a civil engineer, testified for the defendant, *inter alia:*

"It would require a culvert with a span of forty feet and sixteen feet high to carry that amount of water through. The track is twenty-three feet from the bed of the stream. The structure required to go on the top of the culvert would have to be ten feet high, which would make the height of the track twenty-six feet. Such a culvert could not be put in there, as the dump is not that high. It requires one hundred and twenty chambers and barrels like those that are there now to carry that amount of water."

Another engineer corroborated this testimony.

The Court charged the jury, *inter alia,* as follows:

"All that can be asked at the hands of the defendant is that they have observed proper engineering skill so as to avoid injury to others that might arise from the construction of the road in obstructing the natural flow or passage of the water. If the company constructed the culvert in a reasonably skillful manner, and in such a way as to vent the water in cases of ordinary freshets, and kept the same in proper repair, they have done all that can be asked of them. Beyond this they are not held to any responsibility, and for anything else they cannot be called on to account. Therefore, if this were an extraordinary flood, unusual, and one not to be expected—in plain terms, if it was the act of God that swept the house away—the defendant is not responsible, and if

you so find your verdict should be for the defendant. No one can be called upon to provide against unforeseen occurrences.

It was the duty of the defendant, however, in the construction of the culvert, and in keeping the same in proper repair, to take into consideration the size of the stream and the extent to which the same might be swollen in cases of ordinary freshets, and also to take into consideration the location, the surrounding territory, and the probabilities of the collection of waters from the hills adjacent in cases of ordinary freshets. All these things should have been reasonably guarded against by the defendant. If the defendant company did thus construct this culvert, and afterwards kept it in proper repair, they have done all that can be asked of them. There may be occasions, however, where damage results from the concurrent or combined act of God and the negligence or fault of a party. Where this is so, in order to render the party responsible, the negligence on his part concurrent with the act of God must be the real producing cause of the injury. Clothing our language in the words of the Supreme Court, they say that 'in the present case,' a case then under consideration before the Court, 'if the culvert was so unskillfully and negligently constructed as to be insufficient to vent the ordinary high water of the stream, the railroad company building it would have been liable for the injury thereby caused. The apparent facts indicated the duty. The stream, though small, must find a vent or overflow the adjacent land and undermine the railroad. Its size, the character of its channel, and the declivity of the circumjacent territory which forms the water-shed, indicated the probable quantity of water to be passed through. Proper engineering skill should observe these circumstances, and supply the means of avoiding the injury which would result from locking up the natural flow, or obstructing its passage so as to cause a reflux in times of ordinary high water. Beyond this prudent circumspection cannot be expected to look, and there is therefore no liability for extraordinary floods, those unexpected visitations, whose comings are not foreshadowed by the usual course of nature, and must be laid to the account of Providence, whose dealings, though they may afflict, wrong no one.'

Keeping in mind, therefore, these general principles or rules of law, by which you are to be governed, you will inquire in the first place whether this was an extraordinary flood, and whether it was this extraordinary flood

that destroyed the property of the plaintiff. If it was that alone, and was thus the act of God, and the railroad company upon their part were not to blame, then of course the plaintiff cannot recover.

If, upon the other hand, the railroad company, by any neglect of theirs in keeping this culvert in proper repair so as to give vent to the water in cases of ordinary floods or freshets, combined with the act of God to produce this damage or injury, and that act of the company in neglecting—if there was any neglect, and this is a question of fact for the jury—was the producing cause of the damage, then they would be responsible. You will observe that, in order to entitle the plaintiff in this case to recover, the fault must be brought home, and laid down at the feet of the railroad company, that it was by reason of their neglect, if there was any neglect, that this damage was caused to the plaintiff. In the language of the Court, this must be the producing cause and not some trivial or unimportant neglect. It must be such neglect as would be sufficient, concurring with the act of God, to produce the damage."

Counsel for the plaintiff submitted the following point:

"If you believe, from all the evidence in the case, that the three barrels of the defendant's culvert, if open and free from obstructions, would have been sufficient, under the circumstances, to have vented and discharged such a quantity of water as would have prevented the damage done to the plaintiff's school-house, the plaintiff in this action is entitled to recover."

*Answer.*—We have in our general charge commented on the principles of the law governing this case, and have substantially answered the point. You will take the instructions we have given and now affirm the point as explained in the general charge.

Counsel for the defendant presented, *inter alia*, certain points, which were as follows:

"1. That they shall find specifically whether or not the flood in Shaner's Hollow, on the 26th of July, 1879, was an extraordinary flood."

"2. That they shall find specifically the length of time the rain-fall continued; the number or amount of cubic feet of water that passed into the hollow per second when the flood was at its height; the number or amount of cubic feet of water that the barrels of the culvert would empty or vent per second, if perfectly clear."

"3. That they shall find specifically what was the proximate cause of the school-house being carried away."

*Answer.*—"If by these points it is meant that you must formally set forth in your finding certain specific facts, we must decline so to instruct you.

"In coming to your conclusion, however, you should satisfy your minds as to whether this was an extraordinary flood; that you also take into consideration the length of time the rain-fall continued; the amount of water that passed into the hollow, the capacity of the culvert, if open and free from obstruction, to vent the water, and also the proximate cause of the damage.

"All these things are proper for your consideration, and it is your duty to inquire of the same, so as to enable you to come to a just and intelligent verdict."

6. "That if this was an extraordinary flood, and the culvert was in the ordinary state of repair that it had been for a long time previous to that time, the plaintiff cannot recover."

"*Answer.*—If the ordinary state of repairs in which the culvert was kept was not good, long time would not be an excuse; but if the culvert had been kept in an ordinarily good state of repairs before and up to the time of the flood, and you believe this was an extraordinary flood, the defendant would be relieved from responsibility —any want of proper repairs of the culvert not being the proximate or producing cause of the damage."

JUNE 12, 1880.—Verdict for the plaintiff for $1,525 88, upon which judgment was afterward entered.

The defendant then took out a writ of error, assigning as errors the answers to the above points.

*Markle & McCullough* for plaintiff in error.

Ordinary care in maintaining and operating the culvert was all that was necessary: The Pittsburgh, Fort Wayne & Chicago R. R. *v.* Gilleland, 6 P. F. Smith, 445; Hey *v.* Philadelphia, 31 P. F. Smith, 44; McCully *v.* Clark & Thaw, 4 Wright, 399.

The Court erred in its answer and affirmance of the plaintiff's point, because the general charge does not comment on the law that requires ordinary care and ordinary repair of the culvert at the hands of the defendant at all, but in every instance holds the defendant to keeping the culvert in "proper repair" without defining in any way what proper repair was, and leaving the determination of what was a proper condition to a jury. All the world knows that in a trial against a railroad corporation a measure of diligence of the defendant left to the jury cannot be perfect enough not to be condemned. It was error

[Riddle's Appeal.]

not to define specifically, either in the general charge or in the point, what proper repair was: Pa. R. R. Co. *v.* Berry, 18 P. F. Smith, 272 ; Penn'a R. R. Co. *v.* Kerr, 12 P. F. Smith, 353.

*Hazlett & Williams, Jas. S. Moorhead,* and *John F. Westling* for defendant in error.

The culverts were not in "proper repair." Proper repair is such a condition of care and attention as the law would require under ordinary circumstances.    That is, if the culverts were in ordinary condition, then they were in proper order and repair, in the eye of the law

· OCTOBER 16, 1882.—PER CURIAM : The answers of the learned Court below to the various points of plaintiffs and defendant complained of in the specifications of error were in conformity to the opinion delivered when the case was here before.    The Court in no case would be justified in directing the jury to find a special verdict, and the first three points were therefore properly refused.    A Court may, in their discretion in a proper case, recommend a special verdict, but it is a discretion this Court will not review and reverse for their refusing to exercise it.

Judgment affirmed.